John R. Barksdale
Assistant United States Attorney
Post Office Box 22211
Casper, WY  82602-5010
(307) 261-5434

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No. **07-CR-066-D** |
| | ) | |
| v. | ) | |
| | ) | |
| **MICHAEL DAVID BELDERRAIN,** | ) | |
| | ) | |
| Defendant. | ) | |

**MOTION TO PROHIBIT THE DEFENDANT FROM
INTRODUCING EVIDENCE AT TRIAL OF ANY PLEA
AGREEMENTS BETWEEN THE DEFENDANT AND THE
STATE OF MONTANA AND THE U.S. FISH AND WILDLIFE SERVICE**

COMES NOW, the United States of America, by and through its attorney, John R. Barksdale, Assistant United States Attorney for the District of Wyoming, and moves this court for an order prohibiting the Defendant from introducing any evidence of his plea agreements with the Montana authorities and the United States Fish and Wildlife in Montana.  As grounds therefore the United States states as follows:

**Facts**

The Defendant is charged in the current indictment with being a felon in possession of a firearm and with unlawfully possessing and transporting an illegally killed elk. Both of these offenses are alleged to have been committed in December of 2005. He is also charged with two counts of tampering with witnesses involved with that investigation.

These charges arose from an investigation originally conducted by Montana Fish, Wildlife and Parks Regional Investigator Chad Murphy. In January, 2006, Investigator Murphy was in the Custom Taxidermy Shop owned by Kenneth Senst. Investigator Murphy observed a large trophy sized 7 x 7 set of elk antlers. When Investigator Murphy asked Mr. Senst about the antlers, Mr. Senst gave vague information, but did say he killed the elk while he was with the Defendant, Michael David Belderrain, near Buffalo Horn Lakes in Gallatin National Forest in Montana. Investigator Murphy continued investigating the matter and reviewed hunting report logs from the Montana State Board of Outfitters (the Defendant is an outfitter working in Montana). Investigator Murphy determined that the Defendant had guided clients during November 21-26, 2005. Investigator Murphy also determined the Defendant allegedly killed a deer during that same hunt. Investigator Murphy obtained a Montana state search warrant for the Custom Taxidermy Shop and executed it on February 15, 2006. Among other items seized were the 7x7 elk antlers. During the execution of the search warrant, Mr. Senst admitted he lied when originally questioned by Investigator Murphy. Mr. Senst stated the Defendant asked him (Senst)

to lie. Mr. Senst said the Defendant admitted killing this elk and snowmobiling back 1 to 2 weeks later with Lief O'Quist to retrieve it.

During the subsequent investigation, Mr. Senst and the Defendant told Investigator Murphy several different versions regarding where the elk came from. They finally said the elk was killed near Buffalo Horn Lakes in the Gallatin National Forest in Montana and that a bear had eaten both the hunting tags and meat, causing them to only be able to recover the head.

Based on the investigation conducted at that time, the Defendant agreed to be charged with 3 State of Montana misdemeanor violations: (1) submitting false outfitting records (stating Mr. Senst killed the trophy bull elk); (2) guiding clients without a license, and (3) possession of an unlawfully taken big game animal (elk). The Defendant was also given a letter from the United States Fish and Wildlife Service in Montana stating that agency would not refer the matters to the Montana United States Attorney's Office for prosecution if the Defendant pleads guilty to the above listed state charges.[1] The letter also states that any new or future information concerning Mr. Belderrain would be referred for federal prosecution.

In May 2006, Mr. Senst told Investigator Murphy that the elk the Defendant killed in the Buffalo Lakes drainage by the Defendant was actually a 6x7 bull elk and not the 7x7 bull elk, the antlers of which were seized from Mr. Sensts' business by Investigator Murphy. Mr. Senst said that the 7x7 bull elk was killed by Defendant near Highway 191 and that the Defendant, assisted

---

[1] The U.S. Fish and Wildlife agent discussed the case with an Assistant United States Attorney in Montana and sent the letter to the Defendant with the approval of that AUSA.

by two other individuals, recovered the elk head. The three had prepared a "staged" video to try to justify this killing. Although the 6x7 elk taken by the Defendant in the Buffalo Lake drainage was never recovered, it appears from the statements of the Defendant and Mr. Senst that the Defendant was involved in the killing of two elk in November and December, 2005.

On December 15, 2005, a student employee of Yellowstone National Park found the headless carcass of a bull elk that still had some warmth in it near the Yellowstone National Park/Montana boundary near U.S. Highway 191.

The ensuing investigation by Yellowstone National Park Rangers, including the statements of witnesses and confession of the Defendant, determined that the Defendant killed the elk on or about December 15, 2005. Later laboratory tests confirmed that the 7x7 elk antlers recovered from Mr. Senst's taxidermy business came from this elk.

### Argument

The government believes the Defendant will attempt to introduce evidence concerning his Montana charges in an attempt to argue the government is precluded from charging him in the District of Wyoming with the current indictment. The Defendant's attempts to introduce such evidence should be denied. The correct method to determine that issue is through a motion to dismiss the indictment. Without such a motion, the only issue before this court is the guilt or innocence of the Defendant concerning the charges contained in the current indictment. In that regard, only evidence relevant to those

charges should be introduced in the case before this court pursuant to Rules 401 and 402, Fed. R. Evid.  Whatever happened to the Defendant in Montana concerning his state game violations is not relevant pursuant to Rule 402, Fed. R. Evid.  Finally, any plea agreement the Defendant has or had with the State of Montana and/or the United States Fish and Wildlife Office in Montana is not binding on the United States Attorney's Office in the District of Wyoming.  *U.S. v. Crobarger,* 158 Fed.Appx. 100 (10th Cir. 2005); *U.S. v. Sells,* 477 F.3d 1226 (10th Cir. 2007).

The facts clearly demonstrate that the United States Attorney's Office in Wyoming was never a part of any plea agreement the Defendant had with the law enforcement authorities in Montana.  Law enforcement authorities did not have the authority to bind the Wyoming U.S. Attorney's Office to any agreement with the Defendant.  *U.S. v. Flemmi*, 225 F.3d 78 (1st Cir. 2000), *U.S. v. Streebing*, 987 F.2d 368 (6th Cir. 1993). To the contrary, the evidence indicates the Defendant was not even truthful with the Montana law enforcement authorities regarding his illegal killing of the elk that is the subject of this case.  Although the Montana law enforcement authorities knew the Defendant allegedly possessed the 7x7 elk antlers, the evidence Montana law enforcement had at the time of the Montana "deal" was that the Defendant was illegally involved in guiding/hunting in November 2005 with out of state hunters.  The Montana authorities (and later Yellowstone National Park law enforcement) only became aware of the Defendant's illegal killing of the 7x7 bull elk in May 2006 (2-3 months after the Defendant was charged in Montana State Court with wildlife violations), when Mr. Senst told Montana Game Warden Murphy that the Defendant killed that elk.  As a result of that new information, Montana

law enforcement and Yellowstone National Park law enforcement were able to determine the Defendant illegally killed the 7x7 bull elk in December of 2005.

Therefore, any evidence concerning the Defendant's "deal" with the Montana authorities is not relevant to charges pending before this court and this court should deny any attempt by the Defendant to introduce that evidence.

**DATED** this 5th day of June, 2007.

                                        Respectfully submitted,

                                        MATTHEW H. MEAD
                                        United States Attorney

By: _____
        JOHN R. BARKSDALE
        Assistant United States Attorney